UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD LEE CARTER,

        Petitioner,

      v.

DUNCAN MacLAREN,

        Respondent.[1]

_____/

CASE NO. 2:13-cv-11248
JUDGE BERNARD A. FRIEDMAN
MAGISTRATE JUDGE PAUL KOMIVES

## REPORT AND RECOMMENDATION ON PETITIONER'S HABEAS APPLICATION (docket #1) and RESPONDENT'S MOTION TO DISMISS (docket #6)

I.    <u>RECOMMENDATION</u>: The Court should conclude that petitioner's application for the writ of habeas corpus is barred by the one year statute of limitations contained in 28 U.S.C. § 2244(d). Accordingly, the Court should grant respondent's motion to dismiss. Alternatively, the Court should deny the petition on the merits. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Background*

Petitioner Richard Lee Carter is a state prisoner, currently confined at the Kinross Correctional Facility in Kincheloe, Michigan. Petitioner is serving a sentence of 30-50 years' imprisonment, imposed as a result of his 1988 state court conviction for second degree murder, MICH. COMP. LAWS § 750.317, following a jury trial in the Jackson County Circuit Court. Petitioner's application and the state court record reveal the following time line of the state court

---

[1]By Order entered this date, Duncan MacLaren has been substituted in place of Bonita Hoffner as the proper respondent in this action.

proceedings:

- On May 27, 1988, petitioner was convicted  pursuant to the jury verdict.  He subsequently pleaded guilty to being an habitual offender.  On July 8, 1988, the trial court sentenced petitioner to a term of 30-50 years' imprisonment, to be served consecutive to an unrelated term of imprisonment that he was then serving.  The trial court denied petitioner's motion for a new trial on December 9, 1988.  That motion was based on the purported recantation by Wendall Davis, the primary prosecution witness.  Petitioner supported his claim with an attached, non-notarized letter from Davis.

- Petitioner, through counsel, appealed as of right to the Michigan Court of Appeals, raising eight claims:  (1) improper admission of preliminary examination transcript; (2) newly discovered evidence; (3) prosecutorial misconduct; (4) verdict against the weight of the evidence; (5) denial of due process by petitioner's appearance in shackles; (6) improper impeachment by prosecutor of his own witness; (7) ineffective assistance of counsel; and (8) denial of substitute counsel.  On February 6, 1991, the court of appeals affirmed petitioner's convictions.  *See People v. Carter*, No. 114752 (Mich. Ct. App. Feb. 6, 1991).

- Petitioner sought leave to appeal in the Michigan Supreme Court.  The Supreme Court denied leave to appeal in a standard order on December 27, 1991.  *See People v. Carter*, 439 Mich. 902, 478 N.W.2d 647 (1991).

- On January 12, 1995, petitioner filed a delayed motion for new trial, treated by the state courts as a motion for relief from judgment, in the trial court.  The trial court denied the motion on February 6, 1995.   The Michigan Court of Appeals subsequently denied petitioner's application for leave to appeal on June 9, 1995.  *See People v. Carter*, No. 184190 (Mich. Ct. App. June 9, 1995).  Petitioner did not seek leave to appeal this decision to the Michigan Supreme Court.

- Petitioner filed a second motion for relief from judgment on January 9, 2001, raising 18 claims for relief.  This motion included Davis's 1988 non-notarized letter, as well as affidavits by petitioner and another person.  The trial court denied this motion on July 12, 2001, and denied reconsideration on July 31, 2001. Petitioner sought leave to appeal in the Michigan Court of Appeals.  The court of appeals denied petitioner's application in a standard order on February 7, 2003.  *See People v. Carter*, No. 242446 (Mich. Ct. App. Feb. 7, 2003).  On August 29, 2003, the Michigan Supreme Court denied petitioner's application for leave to appeal to that court.  *See People v. Carter*, 469 Mich. 876, 668 N.W.2d 148 (2003).

- On March 24, 2008, petitioner filed in this Court an application for the writ of habeas corpus.  Petitioner raised a single claim for relief, namely, that new evidence shows he is actually innocent.  In support of this claim, petitioner attached an affidavit from

2

Davis executed on December 7, 1993.  On April 9, 2008, Judge Battani summarily dismissed the petition because petitioner's claim was unexhausted.  *See Carter v.*

- Meanwhile, petitioner had filed a third motion for relief from judgment in the trial court on February 28, 2008, raising the claim raised in his first habeas petition.  On September 5, 2008, the trial court denied the motion as a prohibited successive motion pursuant to MICH. CT. R. 6.502(G).  The Michigan Court of Appeals denied petitioner's application for leave to appeal on June 16, 2009, *see People v. Carter*, No. 291607 (Mich. Ct. App. June 16, 2009), and the Michigan Supreme Court denied petitioner's application for leave to appeal on February 26, 2010, *see People v. Carter*, 485 Mich. 1100, 778 N.W.2d 241 (2010).  Sometime during the pendency of this motion, petitioner filed a fourth motion for relief from judgment.  That motion was denied by the trial court on July 8, 2009.  Petitioner did not seek leave to appeal from this denial.

- Petitioner filed a fifth motion for relief from judgment in the trial court on October 5, 2011, again raising his actual innocence claim.  The trial court denied this motion on November 29, 2011.  The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal on June 13 and November 20, 2012, respectively.  *See People v. Carter*, No. 309159 (Mich. Ct. App. June 13, 2012); *People v. Carter*, 493 Mich. 894, 822 N.W.2d 562 (2012).

On March 3, 2013, petitioner filed this application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2] As grounds for the writ, petitioner raises claims of prosecutorial misconduct and actual innocence based on his newly discovered evidence.  In support of his claim, petitioner presents a more detailed affidavit of Davis, executed on July 13, 2011.  Respondent filed a motion for summary judgment on September 20, 2013, arguing that petitioner's habeas application is untimely.  Petitioner filed a response to the motion on November 4, 2013.  For the reasons that

---

[2]Although petitioner's application is file-stamped March 21, 2013, it is well-established that a habeas petition is deemed "filed" for purposes of the statute of limitations on the date the petitioner gives his motion to prison officials for mailing.  *See In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *Beckovich v. Coyle*, 22 F. Supp. 2d 722, 723 (N.D. Ohio 1998); *cf. Houston v. Lack*, 487 U.S. 266, 270 (1988).  Petitioner's application is signed and dated March 3, 2013.  Accordingly, I assume that the petition was given to prison officials for mailing, and was thus "filed," on March 3, 2013.

Prior to filing the instant petition, petitioner filed a motion for relief from judgment pursuant to FED. R. CIV. P. 60(b) under his original habeas case number, seeking to reopen that case and reinstate his petition.  Judge Battani denied that motion on February 20, 2013.

3

follow, the Court should grant respondent's motion for summary judgment. Alternatively, the Court should deny petitioner's application on the merits.

B.      *Statute of Limitations*

1.      *Statutory Timeliness and Tolling*

Respondent argues that petitioner's application is barred by the one-year statute of limitations governing habeas petitions. On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996). In relevant part, the AEDPA amended 28 U.S.C. § 2244 to provide a one year statute of limitations for habeas petitions. Specifically, the statute as amended by the AEDPA provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
> (A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).[3]

As the language of the statute indicates, there are four possible dates on which the limitations

---

[3]The AEDPA codified a one-year statute of limitations provision for motions to vacate federal convictions brought under 28 U.S.C. § 2255 which is nearly identical to the one found in § 2244(d)(1). *See* 28 U.S.C. § 2255 para. 6. Accordingly, cases discussing the § 2255 statute of limitations are applicable here.

4

period may begin to run.  Petitioner does not argue that any provision other than subparagraph (A) governs his petition, nor do his claims implicate any of the delayed starting provisions set forth in subparagraphs (B)-(D).  Under subparagraph (A) of § 2244(d),

> a judgment of conviction does not become "final" . . . until the Supreme Court affirms the conviction and sentence on the merits or denies a timely filed petition for certiorari.
>
> In addition, if a defendant does not file a certiorari petition, the judgment of conviction does not become "final" until the time for seeking certiorari review expires.

*Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999); *see also*, *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997) (conviction became final upon denial of certiorari); *Torres v. Irvin*, 33 F. Supp. 2d 257, 271 (S.D.N.Y. 1998) ("[A] judgment of conviction only becomes final upon the expiration of the ninety days to seek a writ of certiorari from the United States Supreme Court."); *United States v. Dorsey*, 988 F. Supp. 917, 918 (D. Md. 1998) (same); *cf. Penry v. Lynaugh*, 492 U.S. 302, 314 (1989) (for purpose of determining whether application of new rule of law would be an impermissible retroactive application to a case which has already become final, conviction becomes final upon denial of the defendant's petition for certiorari); *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.").

Here, there is no question that petitioner's application is untimely.  Petitioner's conviction became final 90 days after the Michigan Supreme Court's December 27, 1991, denial of leave to appeal in connection with petitioner's direct appeal.  Thus, the limitations clock commenced on March 26, 1992, and expired on March 26, 1993, before the limitations period had been enacted.  Because petitioner's conviction became final prior to the adoption of the AEDPA, he had one year

from the AEDPA's enactment in which to file a habeas petition.  *See Brown v. O'Dea*, 187 F.3d 572, 576-77 (6th Cir. 1999); *Abreu v. Hoffman*, 82 F. Supp. 2d 749, 752 & n.2 (N.D. Ohio 2000); *Thomas v. Straub*, 10 F. Supp. 2d 834, 835 (E.D. Mich. 1998) (Duggan, J.).  Thus, the limitations began to run on April 24, 1996 and expired one year later, on April 24, 1997, absent any tolling.  Because petitioner did not file his application until March 21, 2013, it is barred by the statute of limitations unless the limitations period was tolled for any reason.

Under § 2244(d)(2), the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]"  Petitioner's second motion for relief from judgment was filed in the trial court on January 9, 2001.[4]  By this time, the limitations period had been expired for nearly four years.  It is well established that subsection (d)(2) is a tolling provision and therefore a post-conviction motion only pauses the limitations clock; it "does not reset the date from which the one-year statute of limitations begins to run."  *Smith v. McGinnis*, 208 F.2d 13, 17 (2d Cir. 2000); *see also*, *Brooks v. McKee*, 307 F. Supp. 2d 902, 905 (E.D. Mich. 2004) (Gadola, J.).  Thus, petitioner's habeas application is untimely under § 2244(d).[5]

---

[4]Petitioner's first motion for relief from judgment was filed, and the state court proceedings thereon were concluded, in 1995, prior to the commencement of the limitations period.  This motion had no tolling effect, because the limitations period had not yet begun to run.

[5]Petitioner argues only that he is entitled to consideration of his claims because he is actually innocent.  He does not argue that he is entitled to a delayed commencement of the limitations period based on newly discovered evidence pursuant to § 2244(d)(1)(D).  Nor could petitioner succeed on such an argument.  Section 2244(d)(1)(D) requires a court to review the factual predicate of petitioner's claims and determine whether they could have been discovered prior to when his conviction became final.  It "does not postpone the accrual of limitations based on a *pro se* litigant's or an attorney's belated discovery or realization of the legal consequences of known facts.  Rather, postponed accrual is in order only if the facts themselves supporting a legal claim were undiscoverable in a timely fashion, despite due diligence."  *Fraser v. United States*, 47 F. Supp. 2d 629, 630 (D. Md. 1999).  In short, the operative inquiry is whether the facts themselves, rather than the legal import of or evidence supporting them, could not

6

2.    *Actual Innocence*

Petitioner has offered nothing to rebut the foregoing calculation of the limitations period. Rather, he argues that he is entitled to have his claims considered on the merits because he is actually innocent. The Court should reject this argument.

The Supreme Court has recently held that the actual innocence exception, which allows a court to review the merits of a habeas claim notwithstanding a procedural default, likewise exists for the habeas statute of limitations. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). In order to be entitled to the actual innocence exception, however, a petitioner must present "new and reliable evidence that was not presented at trial" that "show[s] that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 299 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327 (internal citation and quotation omitted). It is not sufficient to show merely that the evidence raises a reasonable doubt which did not otherwise exist. *See id.* at 329 ("The

---

have been discovered through the exercise of reasonable diligence. *See United States v. Pollard*, 416 F.3d 48, 55 (D.C. Cir. 2005); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000); *Brooks v. McKee*, 307 F. Supp. 2d 902, 905-06 (E.D. Mich. 2004) (Gadola, J.); *Hereford v. McCaughtry*, 101 F. Supp. 2d 742, 745 (E.D. Wis. 2000). As the Fifth Circuit has explained, "[s]ection 2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998); *accord Tate v. Pierson*, 177 F. Supp. 2d 792, 800 (N.D. Ill. 2001). As one court has observed, "[t]his provision . . . runs from the date a petitioner [or movant] is on notice of the facts which would support a claim, not from the date on which the petitioner has in his possession evidence to support his claim." *Youngblood v. Greiner*, No. 97 Civ. 3289(DLC), 1998 WL 720681, at *4 n.4 (S.D.N.Y. Oct. 13, 1998). Here, petitioner was aware of the factual basis of his claim–Davis's recantation–when he filed his motion for new trial in 1988. Even if Davis's most recent affidavit constitutes new evidence, the factual basis for the claim was still available to petitioner shortly after trial. As noted above, it is immaterial that petitioner may not have had evidence to support his claim. Because petitioner had available to him all of the facts necessary to support his claims, there is no basis for invoking § 2244(d)(1)(D) to delay the commencement of the limitations period. *See Owens v. Boyd*, 235 F.3d 356, 359-60 (7th Cir. 2001).

meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in light of the new evidence, but rather that no reasonable juror would have found the defendant guilty."). "Examples of evidence which may establish factual innocence include credible declarations of guilt by another, trustworthy eyewitness accounts, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996) (citations omitted); *accord Schlup*, 513 U.S. at 324 (referring to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"). *See generally*, *Souter*, 395 F.3d at 589-90. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Thus, to establish the actual innocence exception "petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). In asserting the actual innocence exception in the limitations context, a petitioner need not make a threshold showing of diligence. *McQuiggin*, 133 S. Ct. at 1935. Nevertheless, "timing [is] a factor relevant in evaluating the reliability of a petitioner's proof of innocence." *Id*. As the Court explained, "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *Id*. In short, "tenable actual-innocence gateway pleas are rare," *id*. at 1928, and "the *Schlup* standard is demanding." *Id*. at 1936.

Here, petitioner claims that Davis's recantation of his testimony establishes his actual innocence. The Court should conclude that Davis's recantation is insufficient to meet the demanding *Schlup* standard. Petitioner was convicted, along with a codefendant, of murdering a fellow inmate while incarcerated in the State Prison of Southern Michigan. At a preliminary examination, Davis testified that he witnessed the murder, and identified petitioner and his

8

codefendant as the perpetrators.  At trial, Davis refused to testify, and the trial court allowed the prosecutor to introduce Davis's preliminary examination testimony.  This was the principal evidence against petitioner at trial.  In his 1988 non-notarized "affidavit," and again in his 2011 affidavit, Davis indicates that he lied in his preliminary examination testimony, and that he did not witness the murder.  He further indicates that he lied to Sgt. Brown of the Michigan State Police and at the preliminary examination in order to obtain a transfer to a camp program, and because he was in a dispute with petitioner over a debt.  These statements are not the type of compelling evidence that establish actual innocence under *Schlup*.  It is well established that "recanting affidavits are always viewed with 'extreme suspicion,'" *Matthews v. Ishee*, 486 F.3d 883, 895 (6th Cir. 2007) (quoting *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991)), and thus "[c]ourts are particularly reluctant to grant [new trial] motions where the newly discovered evidence consists of a witness recantation[.]" *United States v. DiPaolo*, 835 F.2d 46, 49 (2d Cir. 1987).  Affidavits such as the one submitted by petitioner are "treated with a fair degree of skepticism," *Herrera v. Collins,* 506 U.S. 390, 423 (1993), and are viewed with "extreme suspicion." *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991); *see also Byrd v. Collins,* 209 F.3d 486, 508 n. 16 (6th Cir. 2000). Petitioner has presented no other evidence to corroborate Davis's recantation, and his recantation is inconsistent with a prior polygraph result which showed his original (now recanted) statements to the police were truthful.  *Cf. Hash v. Johnson*, 845 F. Supp. 2d 711, 730-31 (W.D. Va. 2012) (witness's recantation of prior statements to police was corroborated by fact that witness had previously failed a polygraph with respect to those statements).[6]  In these circumstances, Davis's

---

[6]A copy of the polygraph report is attached to petitioner's second motion for relief from judgment, this Court's docket entry #11-8.

recantation by itself is insufficient to establish petitioner's actual innocence under the demanding *Schlup* standard. Accordingly, the Court should conclude that petitioner's application is barred by the statute of limitations.

C.      *Merits*

If the Court disagrees with my conclusion regarding the statute of limitations, the Court should alternatively deny the petition on the merits. In support of his application, petitioner raises three grounds for relief:

> I.      WAS PETITIONER DEPRIVED OF HIS FOURTEENTH AMENDMENT CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW WHERE HIS CONVICTION RESULTED FROM A FRAUD PERPETRATED UPON THE COURT BY THE COUNTY ASSISTANT PROSECUTOR IN VIOLATION OF THE US AND STATE CONSTITUTIONS REQUIRING A NEW TRIAL?
>
> II.     IS PETITIONER BEING SUBJECTED TO A VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENT[S] TO THE US CONSTITUTION WHERE HE IS ENTITLED TO A NEW TRIAL ON NEWLY DISCOVERED EVIDENCE WHICH DEMONSTRATES HIS ACTUAL INNOCENCE AND THAT HIS CONVICTION RESTS ON A FRAUD UPON THE COURT, AND BUT FOR THE FRAUD NO EVIDENCE EXISTED TO CONVICT HIM ENTITLING HIM TO BE RELEASE[D] FROM CUSTODY?
>
> III.    WHETHER PETITIONER IS ENTITLED TO BE DISCHARGED FROM CUSTODY WHERE NEWLY DISCOVERED EVIDENCE ESTABLISHING HIS ACTUAL INNOCENCE DEMONSTRATED TO CONTINUE [TO] CONFINE HIM CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT AFTER REVIEWING THE EVIDENCE NOT SUBMITTED TO THE JURY[.]

The Court should conclude that these claims provide no basis for habeas relief.

1.      *Prosecutorial Misconduct/Confrontation*

At trial, Davis refused to testify, eventually invoking his Fifth Amendment privilege against self-incrimination. In the discussion leading to this decision, the prosecutor stated that he had not

10

spoken to Davis and did not know that he would refuse to testify.  Petitioner contends that the prosecutor committed a fraud upon the trial court because, according to Davis in his 1993 affidavit, the prosecutor did speak with Davis prior to Davis being called as a witness.  Petitioner contends that it was this lie by the prosecutor that allowed Davis's prior preliminary examination testimony to be admitted.  This claim is without merit.

Even assuming *arguendo* that the prosecutor had spoken with Davis prior to his being called at trial, the admissibility of Davis's preliminary examination testimony did not depend on whether or not Davis had spoken with the prosecutor.  Rather, the admissibility of the evidence depended solely upon Davis's unavailability as a witness.  Under Rule 804, which in relevant part is the same now as at the time of petitioner's trial, if a witness is unavailable the hearsay rule does not prohibit the introduction of "[t]estimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."  MICH. R. EVID. 804(b)(1).  A declarant is "unavailable" under the rule if, *inter alia*, the declarant is "exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement," or he "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so."  MICH. R. EVID. 804(a)(1), (2).  There is no question that Davis was unavailable under this rule.  Further, both petitioner's counsel and his codefendant's counsel cross-examined Davis at the preliminary examination.  On direct appeal the Michigan Court of Appeals, rejecting petitioner's assertion of error in the admission of Davis's preliminary examination testimony, found that the evidence was properly admitted as a matter of state law.  Nothing in this determination depended in any way on whether or not Davis had spoken

11

with the prosecutor prior to asserting his Fifth Amendment privilege and refusing to testify.[7]

Nor can petitioner show a violation of the Confrontation Clause. Again, whether or not the prosecutor spoke with Davis prior to Davis being called at trial has no bearing on whether a confrontation violation occurred. And petitioner cannot show an underlying Confrontation Clause violation. At the time of petitioner's trial, the Supreme Court's decision in *Ohio v. Roberts*, 448 U.S. 56 (1980), governed the admissibility of Davis's preliminary examination testimony. In that case, explaining that the underlying purpose of the Confrontation Clause is similar to that of the hearsay rule, *i.e.*, to exclude unreliable, out-of-court statements in criminal proceedings, the Court held:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66. Thus, under *Roberts*, hearsay evidence is permissible under the Confrontation Clause if (1) the declarant is unavailable; and (2) the statement is reliable. Importantly, reliability alone is not enough; the prosecution must also demonstrate that the declarant is truly unavailable. *See Barber v. Page*, 390 U.S. 719, 725-26 (1968) (preliminary examination testimony may not be admitted even if it was subject to cross-examination where the witness is not shown to be actually unavailable); *United States v. Quinn*, 901 F.2d 522, 527 (6th Cir. 1990) ("Since we conclude that the Government did not satisfy its burden to demonstrate Braxton's

---

[7]Rule 804 does provide that a witness "is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying." MICH. R. EVID. 804(a). Petitioner does not assert, and Davis does not aver in his affidavit, that the prosecutor in any way coerced Davis into refusing to testify.

'unavailability,' we need not consider conclusively whether her testimony at the suppression hearing bears sufficient indicia of reliability[.]").

Here, as noted above, there is no question that Davis was unavailable.  Nor can there be any question that the preliminary examination testimony was sufficiently reliable to be admitted under the *Roberts* test.  As the Court explained in *Roberts*, a statement is presumed to be reliable if it falls within a firmly rooted exception to the hearsay rule.  *See Roberts*, 448 U.S. at 66.  The theory behind this presumption is that these firmly rooted exceptions represent judgments, based on history and practice, that statements made in certain circumstances are inherently trustworthy such that the "adversarial testing [embodied in the Confrontation Clause] would add little to [their] reliability." *Idaho v. Wright*, 497 U.S. 805, 821 (1990).  Thus, a hearsay exception is "firmly rooted" if it "rest[s] upon such solid foundations that admission of virtually any evidence within [the exception] comports with the substance of constitutional protection."  *Roberts*, 448 U.S. at 66 (internal quotation omitted).  As explained above, Davis's prior testimony was admitted under the former testimony exception set forth in Rule 804(b)(1).  On numerous occasions the Supreme Court has held that testimony given in a prior judicial proceeding which is subject to cross-examination is sufficiently reliable to withstand a Confrontation Clause challenge.  *See Roberts*, 448 U.S. at 67-73; *Mancusi v. Stubbs*, 408 U.S. 204, 216 (1972); *California v. Green*, 399 U.S. 149, 166 (1970); *Mattox v. United States*, 156 U.S. 237, 242-44 (1895).  Thus, the former testimony exception constitutes a "firmly rooted exception" which satisfies *Roberts*'s reliability requirement.  *See United States v. Mann*, 161 F.3d 840, 861 (5th Cir. 1998); *United States v. Lombard*, 72 F.3d 170, 188-89 (1st Cir. 1995); *United States v. Kelly*, 892 F.2d 255, 262 (3d Cir. 1989).  Because Davis's testimony was

admitted pursuant to this exception, it satisfies the reliability prong of the *Roberts* test.[8]

In short, petitioner cannot show that the admission of Davis's prior testimony was improper either under state law or the Confrontation Clause. Nor can petitioner show that this conclusion was in any way dependent upon whether or not the prosecutor had spoke to Davis prior to Davis taking the stand and refusing to testify. Thus, this claim provides no basis for habeas relief.

### 2.    *Actual Innocence/Newly Discovered Evidence*

Petitioner also seeks habeas relief on the basis of his newly discovered evidence, which he

---

[8]In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court abrogated *Roberts* as applied to testimonial hearsay statements. After surveying the historical development of the Confrontation Clause and the jurisprudence interpreting it, the Supreme Court concluded that, under a proper understanding of the Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59. The Court then explained that *Roberts*'s allowance of testimonial statements based on their reliability, where there has been no opportunity for cross-examination of the declarant, departed from this proper understanding of the Confrontation Clause. *See id.* at 60-68. The Court therefore abrogated *Roberts* as applied to testimonial hearsay statements, concluding that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69. In his brief, petitioner relies on *Crawford* and cases applying the *Crawford* rule.

The Supreme Court's decision in *Crawford* does not affect the resolution of petitioner's Confrontation Clause claim. *Crawford* was decided well after petitioner's conviction, and was not the rule of law applicable at the time of petitioner's trial; *Roberts* was. Under § 2254(d)(1), habeas relief is available only if the state court's decision was contrary to, or an unreasonable application of, "clearly established federal law as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). As the Supreme Court has explained, "clearly established law" under § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court *at the time the state court renders its decision.*" *Lockyer*, 538 U.S. at 72. Because petitioner's trial and direct appeal pre-date the Supreme Court's decision, *Crawford* does not constitute "clearly established law" upon which habeas relief for petitioner may be predicated. *See Brown v. Uphoff*, 381 F.3d 1219, 1224 n.4 (10th Cir. 2004); *Lies v. Jackson*, 100 Fed. Appx. 378, 379 (6th Cir. 2004). *But see Bockting v. Bayer*, 399 F.3d 1010, 1021 (9th Cir. 2005). And even if § 2254(d)(1) were inapplicable to this claim, reliance on *Crawford* would still be unavailable as that rule constitutes a "new rule" which may not be used to overturn a conviction on collateral review under the rule of *Teague v. Lane*, 489 U.S. 288 (1989). *See Danforth v. Minnesota*, 552 U.S. 264, 270 (2008) ("[O]ur opinion in *Crawford* announced a "new rule"–as that term is defined in *Teague*[.]"); *Whorton v. Bockting*, 549 U.S. 406 (2007) (holding that *Crawford* does not apply retroactively on collateral review of cases decided prior to *Crawford*).

14

contends shows that he is actually innocent of the crime for which he was convicted.  This claim provides no basis for habeas relief.  A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Thus, the existence of new evidence, standing alone, is not a basis for granting the writ.  As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id*. at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).  Thus, the newly discovered evidence, standing alone, provides no basis for habeas relief.  *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007); *Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007).

In *Herrera* and again in *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court noted that it might be the case that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief," but explicitly declined to determine whether this is, in fact, the constitutional rule.

15

*Herrera*, 506 U.S. at 417; *see also*, *House*, 547 U.S. at 555. This rule affords no basis for relief to petitioner, however. First, as *Herrera* makes clear this rule is limited to the context of executing an innocent person, and has no applicability in a non-capital case. *See Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010); *Wright*, 247 Fed. Appx. at 711. Second, because the Supreme Court has recognized that the question whether there exists a "federal constitutional right to be released upon proof of 'actual innocence' . . . is an open question," *District Attorney's Office for the 3d Jud. Dist. v. Osborne*, 129 S. Ct. 2308, 2321 (2009), a state court's failure to grant relief on the basis of actual innocence cannot be contrary to or an unreasonable application of any clearly established federal law under § 2254(d)(1). *See Reyes v. Marshall*, No. CV 10-3931, 2010 WL 6529336, at *3 (Aug. 23, 2010), *magistrate judge's report adopted*, 2011 WL 1496376 (C.D. Cal. Apr. 14, 2011). *See generally*, *Murdoch v. Castro*, 609 F.3d 983, 994 (9th Cir. 2010) (state court's failure to grant relief on basis which Supreme Court has recognized is an open question cannot be unreasonable application of clearly established law); *Smith v. Hofbauer*, 312 F.3d 809, 817 (6th Cir. 2002) (same). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

D.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S.

16

880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory

17

committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

     2.    *Analysis*

Where, as here, a petition is dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such a case, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485 (emphasis added).  As the Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted."  *Id.* at 486.

If the Court accepts the foregoing recommendation, petitioner cannot show that the Court's ruling on the procedural question is reasonably debatable.  As noted above, petitioner's habeas application is untimely by a number of years, and petitioner has provided no basis for disputing the calculations of the limitations period.  Further, as explained above, it is not reasonably debatable that petitioner's actual innocence claim, based solely on the affidavit of a recanting witness fails to provide the type of compelling evidence of innocence demanded by the *Schlup* standard.  Nor can petitioner show that the resolution of the merits of his claims is reasonably debatable.  As explained above, petitioner cannot show that Davis's testimony was improperly admitted either as a matter of state evidence law or under the Confrontation Clause test applicable at the time of his trial.  Nor,

more importantly, can he show that the prosecutor's alleged "fraud" on the trial court had any bearing on determining the admissibility of the Davis's preliminary examination testimony. With respect to petitioner's actual innocence claim, it is clear that this claim provides no cognizable ground for habeas relief. Accordingly, the Court should deny petitioner a certificate of appealability.

E.     *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's application for the writ of habeas corpus is barred by the statute of limitations governing habeas petitions. Accordingly, the Court should grant respondent's motion to dismiss and should dismiss the petition. Alternatively, the Court should deny the petition on the merits. If the Court accepts either recommendation, the Court should also deny the certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Date: February 4, 2014                          s/Paul J. Komives_____
                                                PAUL J. KOMIVES
                                                UNITED STATES MAGISTRATE JUDGE


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on February 4, 2014.


                                                s/ Kay Doaks_____
                                                Case Manager